ROBINSON et al. v. GRAY.

(Supreme Court, Appellate Term, First Department. June 22, 1896.)

ORDERS—LIABILITY OF ACCEPTOR.

Defendant, for whom one S. had contracted to build a dock, accepted an order drawn on him by S., payable out of the money to become due out of the contract, in order to enable S. to purchase the necessary lumber. Afterwards defendant and S. entered into a different contract for the construction of the dock, of which defendant had no notice, and S. failed to complete the dock. *Held*, that defendant was, nevertheless, liable for the amount of the order.

Appeal from city court of New York, general term.

Action by George W. Robinson and Theodore F. Booth against Robert J. Gray to recover $260, with interest, on an accepted order of defendant. A judgment entered on a verdict directed by the court in favor of plaintiffs was affirmed by the city court (38 N. Y. Supp. 1148), and defendant appeals. Affirmed.

Argued before McADAM and BISCHOFF, JJ.

Blandy, Mooney & Shipman, for appellant.
Goodrich, Deady & Goodrich, for respondents.

McADAM, J. In June, 1888, Henry V. Sloat made an oral contract with the defendant for the building of a dock on Motthaven Canal. Being in need of lumber, he applied to the plaintiffs, lumber dealers, for the material necessary to construct the dock. The plaintiffs refused to furnish the material unless its payment was guarantied by the defendant. Thereupon Sloat drew the following order:

"Robert J. Gray, Esq.—Dear Sir: Please pay Robinson & Booth two hundred and sixty dollars ($260), and charge same to my account.
         "Yours, truly,                                    H. V. Sloat."

On the same day the plaintiffs wrote the defendant a letter as follows:

"R. J. Gray, Esq.—Dear Sir: Mr. H. V. Sloat has ordered of us $820 worth of timber for docks which we understand he is building in part for you at 138th street. Will you guaranty payment to us of $260 of this amount? We await your immediate response,—as we cannot deliver Mr. Sloat the timber until we have favorable reply,—as he is in a hurry for it.
    "Yours, truly,                                    Robinson & Booth."

Thereupon the defendant wrote plaintiffs the following:

"Messrs. Robinson & Booth—Gentlemen: Answering yours 15th inst.: Mr. Sloat is about building a dock for me—and at a price at which I think he can make some money—and he is also doing some work for neighbors of mine. When he finishes his contract in a satisfactory manner to me I intend paying him for his work at such time if he will give you an order on me for $260 (two hundred and sixty dollars) with the understanding that it is to be applied in part payment of the amount on my contract with him, I will honor it.
    "Yours, respectfully,                                Robert J. Gray."

These two letters and the order present the contract between the plaintiffs and the defendant. Thereafter, some one from the dock department, insisting that it had jurisdiction over docks built in that part of the city, requested a different construction; and the defendant and Sloat thereupon entered into a written contract, enlarging the provisions of the oral one theretofore made, and agreeing to make the dock conform to the requirements of the dock department, but the amount payable thereunder was the same as that agreed to be paid under the first contract. At the time the written contract was made, the lumber had not been used in the construction of the dock. It was used, however, under the new agreement. The plaintiffs knew nothing of the change of contract. Sloat being unable to carry out the written contract, the work was thereafter finished by the defendant. The defendant rendered the plaintiffs an account showing that Sloat was indebted to him, after the completion of the work, in the sum of $382.47; including as a charge against Sloat the plaintiffs' bill, in the amount of $274.87, for which the defendant apparently considered himself liable. The plaintiffs admitted that, so far as the defendant was concerned, the first contract was never completed. Upon the conclusion of the trial, defendant's counsel asked leave to go to the jury upon the question whether Sloat had performed contract No. 1, and whether he fulfilled contract No. 2, which motion was denied, and the defendant excepted. The court thereupon directed a verdict in favor of the plaintiffs for the sum of $260, mentioned in the order, with the interest thereon, making $361, to which direction the defendant excepted.

The defendant's motion to go to the jury was properly denied, for it was practically conceded that Sloat had not performed either contract, and there was evidently nothing upon which the jury were required to pass.

The question is whether, upon the established facts, the plaintiffs were entitled to recover. If entitled to recover at all, it was upon the theory that the defendant, by making the second contract with Sloat without their knowledge or consent, prevented Sloat from completing the first, and disabled him from earning the fund which was to

pay the $260 in question. We think the recovery had was authorized upon the principle stated, and that the defendant did not establish a valid defense by showing a nonperformance of the first contract, caused by his own voluntary act. Risley v. Smith, 64 N. Y. 576; Gallagher v. Nichols, 60 N. Y. 438, 448; Kingsley v. City of Brooklyn, 78 N. Y. 200, 216; Mersereau v. Villari, 74 Hun, 59, 26 N. Y. Supp. 135; Bank v. Drumgoole, 109 N. Y. 63, 15 N. E. 747; U. S. v. Peck, 102 U. S. 64; Rockwell v. Hurst (Com. Pl.) 13 N. Y. Supp. 290. In Risley v. Smith, supra, the plaintiff was employed by a corporation desirous of constructing a railroad to obtain a contractor to perform the work. The defendants were secured by him, and agreed with the railroad company that they would perform the work for $250,000. While the contract between the parties was being drawn up, the question of the compensation of Mr. Risley arose; and, for reasons unnecessary to mention, it was decided that the corporation should agree to pay the defendants $255,000, and in consideration thereof the defendants were to give the plaintiff a draft for $5,000, payable pro rata out of the moneys to become due to the defendants as they progressed with the work under the proposed contract. Subsequently the defendants, before any portion of the moneys became due under this contract, voluntarily abandoned the contract, without plaintiff's consent, and the same was surrendered and canceled. The court of appeals upheld the plaintiff's right to recover the amount of the draft from the defendants; Judge Earl, who wrote the opinion, saying, at page 582:

"Can they [the defendants] give this draft, and then set up their own default to defeat its payment? We think not. For a sufficient consideration they gave this draft, payable out of a particular fund; and they cannot, by their own default, prevent the creation or realization of that fund, and then set up the absence or the failure of the fund as a defense to this action. Having by their own fault prevented the condition from arising which would make the payment to the plaintiff due, they are estopped from setting up the failure of the condition to defeat the plaintiff's claim."

In Gallagher v. Nichols, supra, it appeared that the defendant, who was the owner of certain lots, accepted an order drawn upon him by one Lewis, a contractor, for $3,750, due to the subcontractors, "payable at the time when the first tier of beams shall be laid and leveled up." Before the building had arrived at that stage the defendant sold the property, and, by consent, canceled the contract with the contractor. The action was by the subcontractors in whose favor the order was drawn, and the court said:

"It is insisted that there was a failure of the condition precedent, which required that the first tier of beams should be laid on and leveled up before any payment was to be made. The answer to this position is that the act of the defendant prevented the laying of the first tier of beams. The walls were ready for them, and the defendant was bound to have them laid within a reasonable time. Instead of this, defendant and Lewis canceled the contract by mutual consent on the 12th of August, and defendant sold the lots. The defendant thus made it impossible for this to be done, and he is estopped from insisting upon any such condition."

The contract under consideration in Kingsley v. City of Brooklyn, supra, provided that a percentage of the moneys earned should be reserved until the contract was completed, duly certified to, and accepted. By the act of the defendant in preventing the plaintiffs from

proceeding with the work, it became impossible for the plaintiffs to complete the same. The court said, "Under such circumstances, we think they are entitled to recover without the certificates."

In Mersereau v. Villari, supra, the contractors for building a house drew an order on the defendant, the owner, to be paid "out of the last payment to become due on the contract," which order the owner accepted. It was conceded that the work·had not been completed, and "claimed upon the trial that the contractors were wrongfully prevented from completing their contract by the defendant," and "there was some testimony to support that°contention." In affirming the judgment in favor of the plaintiff, the court said:

"If, without the fault of the defendant, no money became due under the contract upon the last installment, the payment of the order did not become obligatory. But the defendant cannot set up her own default to render the order inoperative. She could not wrongfully prevent the creation of the fund, and then set up its failure as a defense to an action on the draft."

And such is the tenor of the controlling cases upon the subject.

If the defendant had notified the plaintiffs of the abrogation of the first contract, and the making of the new one, they might, perhaps, have saved their claim, because there was sufficient of their lumber upon the dock to have satisfied the indebtedness, and Sloat might not have opposed their taking it. But, having no notice, they were unable to do anything in this direction, and had to rely, as they lawfully might, upon the carrying out of the original contract. If Sloat had been unwilling to go on with the first contract, the plaintiffs might, perhaps, have been willing to finish it, to save their debt, as the court intimated might be done in Bank v. Drumgoole, supra. But the defendant, after having induced the plaintiffs to part with their lumber upon his promise to pay out of the moneys coming to Sloat, canceled the contract out of which they were to be paid, and ignored the plaintiffs altogether, as if they had no rights which required protection. This he could not legally do, in view of his obligation to them.

The suggestion that the dock department prevented the carrying out of the contract was not pleaded as a defense, nor was it established at the trial. It does appear by the evidence that some one from the department made objection, and that the matter was finally discussed at the office of the dock board, but no official action by the department seems to have been taken. If the department had taken official action, and it had been pleaded in defense (Heine v. Meyer, 61 N. Y. 171), its jurisdiction over the subject-matter would have been open to review, and might have led to the pertinent inquiry whether Mt. Morris Canal, where the dock was erected, was not private property, exempt from its supervision or control. The matter did not go that far, for the claim asserted was acquiesced in by the defendant and assented to by Sloat, although he contends he was coerced into making the new contract by the defendant by reason of these objections. In view of what occurred on the trial, we think this element of the case does not come before us in a manner that requires more than passing notice.

The defendant, knowing the obligation he had assumed to the

plaintiffs, did not ·consult them in regard to the new contract, or apprise them in any way that its performance was interfered with, and that the fund which they expected would pay their draft would never materialize. Under the authorities cited, the defendant is estopped from claiming that the fund was never earned, and it has, in legal contemplation, been earned; so that the plaintiffs, at the time·of commencing their action, were clearly entitled to the $260 mentioned in the letters and the order. For this reason the trial judge properly directed a verdict in favor of the plaintiffs, and the judgment must be affirmed, with costs.